

# Exhibit 1

```
 1                    P R O C E E D I N G S
 2          THE COURT:  Call the case, Anita.
 3          THE COURTROOM DEPUTY:  This is in the matter of the
 4   United States of America versus John Robert Rock, case number
 5   6:07-criminal-26-Orlando-31KRS.
 6          THE COURT:  Appearances, please.
 7          MR. ECKHART:  Good afternoon, Your Honor.  Dan
 8   Eckhart on behalf of the United States.  Seated next to me is
 9   Kevin Farrington from the F.B.I.
10          THE COURT:  And for the defendant.
11          MR. KENNY:  Good afternoon, Your Honor.  Peter
12   Warren Kenny for the defendant, and the defendant is present.
13          THE COURT:  All right.  We're here today for the
14   sentencing in this matter.  Mr. Rock pled guilty on July 19
15   of this year to Count One of the Indictment, which is a
16   conspiracy to commit a Hobbs Act robbery, in violation of
17   Title 18, United States Code, Section 1951; and to Count Five
18   of the Indictment, charging him with possession of a firearm
19   by a prohibited person, in violation of 18, United States
20   Code, Section 922(g)(1).
21          And I have for consideration in connection with the
22   sentencing a presentence report dated October 1, 2001, that I
23   have read and will consider further during the course of the
24   sentencing.  I also have a motion for a downward departure
25   filed by the government at document number 60.
```

```
 1          So let's begin, Mr. Kenny, by seeing if you have
 2  any objections to the factual content of the presentence
 3  report.
 4          MR. KENNY: No, sir.
 5          THE COURT: All right. Then let's look at the
 6  scoring. We have a base offense level of 24 -- I'm looking
 7  here now at paragraph 22 of the PSR -- and we add four levels
 8  under 2(k)2.1(B)(6), and that gives us an adjusted offense
 9  level of 28; and subtracting three for acceptance of
10  responsibility, we end up with a 25.
11          Then in terms of criminal history, we have burglary
12  at age 27, another burglary at age 31, and the sale of
13  cocaine at age 31, for total criminal history points of
14  seven, which puts him in category IV; but the career offender
15  provisions of 4(b)1.1 would appear to apply to Mr. Rock,
16  which would enhance his offense level to 32, subtracting
17  three from acceptance of responsibility -- or for acceptance
18  of responsibility would give us a 29, and his criminal
19  history is enhanced to VI.
20          Is there any objection to that scoring, Mr. Kenny?
21          MR. KENNY: Not to the scoring itself, Your Honor,
22  no.
23          THE COURT: Okay. All right. Then there being no
24  objection to the factual content of the presentence report
25  and no objection to the guideline computation, the Court
```

adopts the statements contained in the PSR as the findings of the Court and determines that the advisory guideline score is total offense level 29, criminal history category VI, which would call for a term of imprisonment of between 151 and 188 months, two to three years' supervised release, a fine of between 15,000 and $150,000, and a $200 special assessment.

So let's take the 5(k) motion, Mr. Eckhart. The government's recommending two levels. Do you wish to be heard on that?

MR. ECKHART: Yes, Your Honor. I'd just like to indicate that this particular defendant has provided substantial assistance. The quantity of assistance has been -- I hate to use the word "substantial," but there's been a great deal of assistance. It's been provided in a timely manner. It's been quality information. And Agent Farrington has told me that it does appear that there will be results that will be directly attributable to the information that this defendant provided us. And I can't get into further details or I would not like to get into further details because the nature of some of the information involves possibly national security.

THE COURT: Well, I understand that; but based on your description of the depth and value of the information, a two-level reduction seems rather paltry to me.

MR. ECKHART: May I take a second?

1        THE COURT: Sure.

2        (Discussion held off the record between Mr. Eckhart
3   and Agent Farrington.)

4        MR. ECKHART: Unfortunately, Your Honor, at this
5   juncture I'm not able to do that without approval from my
6   chain of command, is the way I understand it, to go to a
7   level three.

8        THE COURT: Okay. Well, your office has never
9   bothered to disclose to me what basis they use to reach their
10  recommendation. So I have no idea whether two is good, bad
11  or indifferent, frankly.

12       I have a pretty good sense in drug cases because
13  I've got a lot of statistics that I can use, which shows that
14  this district is more conservative than about 90 percent of
15  the other districts in the country when it comes to its
16  recommendation for 5(k) assistance in drug cases; but I don't
17  get many of these cases, so I don't have similar background
18  or statistics to deal with it. It just seems to me that two
19  is relatively low.

20       Mr. Kenny.

21       MR. KENNY: I have to agree with the Court. And,
22  in fact, I think I was going to say basically what Mr.
23  Eckhart said. In arguing for a much larger reduction, I can
24  tell the Court, I think without risking national security,
25  that Mr. Rock has spent literally hours, many hours, talking

to Agent Farrington and going -- talking about the various people that he knows in the far-right movements of the country, and talking about specific instances of violence, naming people who were involved in those incidences, talking about the backgrounds and the connections between an awful lot of the people, particularly those people representing a variety of these far-right-wing factions in the Florida area, and he knows clearly a lot of the people that Mr. Farrington is interested in. He obviously doesn't know some of the others and was candid enough to admit that. When Mr. Farrington would show him pictures, sometimes he would say, "I don't know this guy at all," but he spent an enormous amount of time.

I think that this is the sort of information that is more preventative than necessarily the sort of thing that we get in a drug case where they then go out and arrest somebody else. This is more information to try to allow the government to monitor these groups to make sure that substantial violence doesn't come out of them.

I would suggest to the Court that even a six- or seven-level reduction would not be out of the question in this case. Certainly, Mr. Rock not only has provided this information, he would continue to do so; and I would also point out to the Court that he has provided the information at some risk to himself. This, as you say, is not a drug

case; this case is involving skinheads, the kind of people who are quite violent and form very violent gangs in the prison system, as you probably know. And Mr. Rock, if it is determined by these people or they even believe that he's an informant, will be at risk of his life during the time that he is in prison. He took this into account in deciding to talk to Mr. Farrington; and at least as far as I can tell, he's been really quite candid and very extensive in what he has said.

So given all -- given the extent of the information that he's provided, given the nature of the information he's provided, and also given the prejudice to himself in providing this information, I would ask the Court to consider giving him a six- or seven-level reduction in his sentence.

This is, I think, a somewhat unusual case in that he has provided a substantial amount of information and that his co-defendant, quite frankly, would probably be in a better position in the sense that he doesn't have the record that Mr. Rock does, as I'm sure you know, has refused to talk to the government at all about anything that he knows, even though he was apparently quite close to Mr. Rock during a large portion of Mr. Rock's experience with these groups.

So I think that the Court should consider a much deeper reduction than simply the two levels the government has currently recommended.

1  I did, to avoid that, that --

2  THE COURT: You know, you can't criticize the
3  guidelines. They're sacrosanct.

4  MR. KENNY: I'm not suggesting that you criticize
5  the guidelines.

6  THE COURT: That's good, because that's -- you
7  know, you can't do that. I mean, the Sentencing Commission,
8  they are very wise people.

9  MR. KENNY: Oh, I'm sure they are.

10  THE COURT: They've got it nailed. I mean, they
11  don't make mistakes. I just want to make sure you knew that.

12  MR. KENNY: Thank you.

13  THE COURT: Well, like I said, I'm in a bit of a
14  quandary here because I don't know what basis the government
15  uses to get its recommendation. So, I mean -- and I've asked
16  them before to disclose that to me, and they've claimed
17  executive privilege.

18  So it is what it is. And I'm left to try to
19  determine what an appropriate reduction would be based on
20  what's been presented to me, and that includes my evaluation
21  of the significance and usefulness of the defendant's
22  assistance, taking into consideration of course the
23  government's evaluation of that assistance; and it appears to
24  me from what both counsel have told me that Mr. Rock's
25  cooperation has been quite significant and very useful. I

1    take it the government would not object to that description.

2    MR. ECKHART: No, Your Honor, no objection to that.

3    THE COURT: And, frankly, I think that the type of
4    information here that could undermine or perhaps prevent
5    violence by these hate groups is perhaps more beneficial to
6    society than ratting on a street-level drug dealer.

7    I also assume that Mr. Rock has been truthful and
8    complete in the information he's provided. In other words,
9    you have no basis to believe that he's been untruthful or has
10   hidden facts from you that are relevant and within his
11   knowledge. Is that correct?

12   AGENT FARRINGTON: Yes.

13   THE COURT: And then, of course, there's the danger
14   element, which is one of the first things that came to my
15   mind as well. Knowing the types of groups that we're dealing
16   with here, I mean, their cause celeb is violence. So I'm
17   sure that it would not take much for them to visit violence
18   on one of their own whom they deem to be a deserter.

19   So I think in light of all that, that, you know, I
20   really can't -- I can't agree with the government's
21   recommendation. I don't think it's adequate based on the
22   5(k)1.1 factors.

23   So I'm going to -- because I believe very strongly
24   that our government ought to be doing perhaps more than they
25   are -- I know the F.B.I. is overworked and underpaid, like